■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. COLIN KELLY, Appellant.— Judgment, Supreme Court, New York County, rendered on April 16, 1973, convicting defendant, after a jury trial, of the crime of manslaughter in the second degree, affirmed. We agree with the view of our dissenting colleague that the defendant did not receive a completely balanced charge. Although the court referred to the statements of the defendant to the witness, Cofield, the court did not make countervailing references to the claims of the defendant that those statements were "nonsense", "untruthful" and "wild". The contention of the defendant with regard to this subject should have been adverted to by the trial court and it was error not to do so. But the question is whether such error should be deemed substantial error, sufficient to invalidate the jury's verdict and require a new trial. We think not. Even if the court had specifically called the attention of the jury to the defendant's contention, it is our view that the jury would not have brought in a different verdict. Obviously, they chose to determine that, when the defendant was speaking to Cofield in the motel room, he told the truth concerning the manner in which the defendant met his death. The defendant's version of this conversation had been repeated many times during the trial, not only by his testimony both on direct and cross, but also by the summation of both defense counsel and the prosecutor. The jury was completely familiar with the defendant's contention and we entertain no reasonable doubt that a reference by the trial court to same would not have changed the conclusion reached by the jury. In addition to the defendant's own detailed statements to Cofield, which were not denied by him, as to how he killed the deceased, there is certain physical evidence which contradicted the defendant's claim of self-defense, e.g., his presence on local streets underneath the West Side Highway at about 3:00 A.M., his failure to use the highway itself in driving to Battery Tunnel and his failure to recall any other occasion when he ever used the streets under the highway in driving to his home in Staten Island in nearly two years of commuting. Also damaging to the defendant's case was the ballistic evidence clearly discrediting the defendant's testimony as to where he was at the time of the shooting, the absence of powder burns on the victim, which contradicted the claim of a struggle with the deceased, the recovery of the spent bullet at the front wheel of the veal truck and other physical evidence in this record. Also, we do not agree that, under the circumstances of this case, the delay of the trial was such as would justify a dismissal of this murder indictment. Concur — McGivern, P. J., Nunez, Tilzer and Capozzoli, JJ.; Murphy, J., dissents in the following memorandum: For essentially the same reasons set forth in my dissent in *People* v. *Imbesi* (46 A D 2d 625), I would reverse this conviction and dismiss the indictment. Defendant was indicted on December 31, 1970, and not tried until March, 1973, some 27 months later. Concededly, what constitutes unreasonable delay depends upon the circumstances of each case (*Moore* v. *Arizona.* 414

U. S. 25; *Barker* v. *Wingo,* 407 U. S. 514; *People* v. *Minicone,* 28 N Y 2d 279). And while it does appear that the prosecution's principal witness was incapacitated during a substantial portion of 1972, the justification for the approximately 15-month delay between indictment and defendant's first motion to dismiss, resting primarily on the assigned prosecutor's preoccupation with other cases and investigations, was legally insufficient. (See *Barker* v. *Wingo, supra,* p. 537, concurring opn. of Mr. Justice White.) Interestingly, in such connection, it is noted that the prosecutor who opposed defendant's application was not the one who eventually tried the case. If not for the fact that I was voting to dismiss the indictment for failure to accord defendant a speedy trial, I would vote to reverse and remand for a new trial because my reading of the court's charge discloses a prejudicial imbalance in its marshaling of the evidence; to which a proper exception was taken. Admittedly, the Trial Judge now need only refer to the trial evidence to the extent necessary to explain the application of the law to the facts. (CPL 300.10, subd. 2.) However, the court may not unduly dwell on the aspects of the case most favorable to the People, without fairly presenting the defendant's claim as well. (*People* v. *Ramsey,* 40 A D 2d 837.) Defendant, a Transit Authority patrolman, was charged with homicide when, while off duty, he allegedly shot a man without cause. After a jury trial, he was convicted of manslaughter in the second degree. The incident occurred in August, 1968. Defendant's self-defense claim was originally credited by the Grand Jury and no indictment resulted. In the summer of 1970 he assertedly confided to a fellow patrolman that the homicide was, in fact, unjustified. Several months later defendant's confidant, one Cofield, while working on another case with an Assistant District Attorney, revealed to the latter defendant's statement. A scheme to elicit a "confession" from defendant was then devised. Cofield was set up in a motel and instructed to invite defendant over to discuss Cofield's "plan" to commit a homicide. During meetings held on November 19 and 20, and particularly on November 20, defendant made inculpatory statements which were recorded. This indictment and trial ensued. Defendant testified in his own behalf. He repeated his prior self-defense claim and contended that his "confession" to Cofield was made in jest since he disbelieved Cofield's story of a planned murder. Though defendant could not recall a second meeting at the motel, he admitted meeting with Cofield once. Cofield testified that liquor was present at both meetings and that he believed defendant "had a drink or so". Toward the conclusion of the court's lengthy charge, the jury was advised that it could consider any statements made by defendant. The court then proceeded, at length, and covering four pages of the trial transcript, to read, verbatim, portions of defendant's "confession" to Cofield, repeating every obscene and vulgar expression used by defendant. No mention whatsoever was made of the fact that defendant and Cofield had been imbibing liquor at the time or of defendant's testimony that he discredited Cofield's "wild story" and "was just telling him one back" and "trying to be as facetious as he was" because he thought Cofield was "putting him on". As we recently said in reversing a conviction in a similar situation: "Read as a whole, the charge was prejudicial in that it appeared to emphasize the strength of the prosecution's case, in derogation of the requirement to give balanced instructions to the jury in a criminal trial." (*People* v. *Bell,* 45 A D 2d 362, 364.) The prejudicial error is magnified here since the court unduly emphasized the only incriminating evidence against defendant; the absence of which resulted in a prior refusal to indict. In light of the foregoing, the judgment should be reversed and the indictment dismissed.